# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DENNIS N. CARABAJAL,

    Petitioner,

vs.                                             No. Civ. 00-207 BB/WWD

TIM LEMASTER,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court upon Petitioner's Application for a Writ of Habeas Corpus ("Petition") **[Doc. 1]** pursuant to 28 U.S.C. § 2254, filed February 10, 2000. Petitioner is currently incarcerated and is represented by the Federal Public Defender. On March 2, 1998, following pleas of guilty to Second Degree Murder, Armed Robbery with Old Age Enhancement, and Tampering with Evidence, Petitioner Dennis Carabajal was sentenced to prison for a total of fifty-eight years of which eight years was conditionally suspended. Petitioner is confined pursuant to the Judgment and Sentence entered in the Thirteenth Judicial District of the County of Sandoval on March 5, 1998.

    2. On May 13, 1999, Mr. Carabajal filed an Amended Petition for Writ of Habeas Corpus in state district court. See Letter Decision of Judge Brown, Ex. M, attached to Answer. Following an evidentiary hearing, Judge Brown denied Petitioner's state habeas claim. See id. On December 13, 1999, Mr. Carabajal filed a Petition for a Writ of Certiorari in the Supreme Court of New Mexico, which was denied on December 20, 1999. See Exs. O, P, attached to Answer.

3. In his Petition filed in this Court on February 10, 2000, Mr. Carabajal alleged five grounds for relief:

(1) Ineffective assistance of counsel,
(2) Involuntary plea of guilty,
(3) Malicious prosecution,
(4) Incompetent to enter a plea of guilty, and
(5) Illegal sentence.

4. In his Memorandum Brief in Support of Petition for Writ of Habeas Corpus ("Memorandum") **[Doc. 21]**, Petitioner alleges only ineffective assistance of counsel as a ground for relief. Petitioner contends that he received ineffective assistance of counsel for the following reasons:

(1) Counsel failed to peremptorily challenge Judge Kenneth Brown,
(2) Counsel did not conduct an adequate investigation in that he failed to interview witnesses, investigate physical evidence and obtain Petitioner's medical records,
(3) Counsel failed to file a motion for change of venue,
(4) Counsel failed to file a motion to withdraw the plea agreement,
(5) Counsel failed to insure the presence of witnesses at sentencing and at the hearing on the motion to reconsider the sentence.

5. Respondent contends that Petitioner abandoned issues two through five in his Petition, because he failed to brief these issues in his Memorandum. However, while Petitioner apparently abandoned issues two through five as separate claims, he incorporated a substantial number of the arguments contained in those claims into his claim of ineffective assistance of counsel.[1] Thus, I will address Petitioner's arguments in the context of his claim of ineffective assistance of counsel.

6. Petitioner pled guilty to second degree murder, armed robbery and tampering with evidence. Once a defendant has pled guilty, the only non-jurisdictional avenue for challenging his

---

[1] Mr. Carabajal presented the issues in his state habeas petition as a claim of ineffective assistance of counsel. See Exs. G, O, attached to Answer.

2

conviction is to claim that his plea was not knowing and voluntary. Romero v. Tansy, 46 F.3d 1024, 1033 (10th Cir. 1995) (citing Mabry v. Johnson, 467 U.S. 504, 508-09 (1984)) (other citations omitted).

*Ineffective Assistance of Counsel*

7. A guilty plea may be rendered involuntary by the constitutionally inadequate performance of defense counsel. Romero, 46 F.3d at 1033. Here, Petitioner alleges that ineffective assistance of his defense counsel led to his "reluctant acceptance of a plea agreement that resulted in an overly severe sentence." Mem. at 1.

8. In order for Petitioner to prevail on his claim that he received ineffective assistance of counsel, he must satisfy a two-part test. See Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998). First, he must show that "counsel's representation fell below an objective standard of reasonableness." Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). To demonstrate that his attorney's performance fell below this standard, Mr. Carabajal must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, the Court is mindful that "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991).

9. Second, even if Petitioner is able to satisfy the first prong of this test, he will not be entitled to relief unless he is also able to demonstrate that his counsel's performance prejudiced

3

him, that is, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Petitioner's mere assertions that he would have opted for trial are not enough to satisfy the prejudice prong.

*Failure to Disqualify Judge Brown*

10. Petitioner alleges that his first and second counsel were ineffective in that they failed to timely disqualify Judge Kenneth Brown as a trial judge in this matter. Petitioner "felt that the judge would be prejudiced towards him, for he had been in front of this judge on two prior occasions." Pet. at 6. Respondent contends that this claim is both unexhausted and procedurally defaulted because Petitioner failed to present it to the New Mexico Supreme Court on collateral review.

11. I agree with Respondent that Petitioner's claim of ineffective assistance of counsel based on a failure to disqualify Judge Brown is probably unexhausted and procedurally defaulted. However, even if this claim were not procedurally barred, I find that it fails on its merits.

12. First, Petitioner's right to peremptorily strike a trial judge is based on state procedural law. See State ex rel. Gesswein v. Galvan, 100 N.M. 769, 676 P.2d 1334 (1984) (holding that the right to disqualify a judge provided under N.M. Stat. Ann. section 38-3-9 is procedural and subject to modification by the New Mexico Supreme Court). Federal habeas corpus relief ordinarily does not lie for violations of state law. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Second, even assuming that counsel unreasonably failed to disqualify Judge Brown pursuant to section 38-3-9, there is no evidence that Petitioner was prejudiced by counsel's error. Petitioner contends that "facing a different judge, [Petitioner] would have been more likely to succeed on the motion to suppress [his confession], and thus more likely to proceed to trial." Mem. at 11.

4

Petitioner fails to demonstrate any factual support for this contention. Further, Petitioner's argument is far too speculative to establish a reasonable probability that, had Judge Brown been disqualified, Petitioner would have rejected the plea and gone to trial. Finally, Petitioner does not point to any bias on the part of Judge Brown that implicates the fundamental fairness or reliability of the proceedings that led to the plea agreement. Accordingly, relief based on this ground should be denied.

*Investigation with respect to Witnesses, Physical Evidence and Medical Records*

13. Petitioner's counsel stated that Mr. Carabajal's sisters and daughters were interviewed and that one sister remained in contact with the defense team throughout the case. See Aff. of Rein, Ex. 6 to Ex. H, attached to Answer. Counsel also stated that he and his investigator interviewed all of the State's witnesses. Id. In addition, counsel stated that two psychologists were retained, each of whom met with Mr. Carabajal and discussed his history of abuse. Id. Petitioner's counsel said that he and Mr. Carabajal then discussed the significance of this evidence in preparing a defense. Id. Counsel also stated that, with the exception of the videotape, he and his investigator "examined all of the evidence in this case," including the clothes found near the victim's body. Id.

14. Nevertheless, Petitioner claims that his counsel was ineffective because he failed to conduct an adequate investigation with respect to potential defense witnesses, physical evidence and Mr. Carabajal's medical background.

15. For example, Petitioner alleges that his counsel failed to contact and/or interview a multitude of witnesses, including "the individuals at the hot springs, at San Ysidro, and in Las Vegas, including Yvonne Lovato, Cathy Anaya, and Ms. Anaya's sister." Mem. at 12. Petitioner

5

also stated that his counsel failed to contact the following potential witnesses: Petitioner's sisters and daughters, Louie or Anna Roybal, Paul Gutierrez, Jr., Cynthia Griego, Geraldine, an acquaintance of Mr. Carabajal's aunt, a pastor affiliated with an outreach program known as "The Rock," a Catholic priest in Cuba, New Mexico, and Antonia Chavez. Id. at 12-14.

16. Petitioner claims that these witnesses could have testified regarding Mr. Carabajal's extreme level of intoxication which "could negate the intent required for first- or second-degree murder, or even support a lower level of homicide, such as voluntary manslaughter." Mem. at 18. Petitioner's argument on this point, however, lacks merit. The law in New Mexico provides that evidence of intoxication "may not be used . . . to reduce second-degree murder to voluntary manslaughter, or involuntary manslaughter or to completely excuse a defendant from the consequences of his unlawful act." State v. Brown, 1996-NMSC-073, ¶35, 931 P.2d 69, 78. Here, Petitioner pled guilty to a charge of second degree murder. Under state law, evidence of intoxication may not be used to reduce that charge to manslaughter. See United States v. Gray, 182 F.3d 762, 767 (10th Cir.1999) ("To prevail in [an argument] that counsel should have advised him of a potential defense, [petitioner] must show that the defense likely would have prevailed at trial."). Thus, Petitioner could not have been prejudiced from counsel's alleged failure to investigate witness testimony regarding Petitioner's intoxication.

17. Similarly, Petitioner alleges that an investigation into Petitioner's personal history "as a victim of sexual abuse when he was a child and his awareness of his daughters' similar abuse by others, would have bolstered a defense of provocation." Mem. at 18. This argument fails for essentially the same reason as did Petitioner's intoxication argument. "It is settled law [in New Mexico] that the victim must be the source of the provocation." State v. Munoz, 113 N.M. 489,

6

491, 827 P.2d 1303, 1305 (Ct. App. 1992). Thus, an investigation that reveals information pertaining only to Petitioner's personal history does not provide evidence of provocation under New Mexico law. Indeed, an argument that evidence of Petitioner's personal characteristics may explain his "uncontrollable reaction" to the victim's sexual advances is apparently contrary to New Mexico law on provocation. See UJI 14-222 NMRA 2001 (defining sufficient provocation in terms of an "<u>ordinary</u> person of <u>average</u> disposition.") (emphasis added).

    18. Petitioner also alleges that his counsel failed to investigate physical evidence found near the victim's body, failed to have the victim's car dusted for fingerprints and failed to view a videotape purportedly showing someone using the victim's credit card shortly after his death. Petitioner claims that counsel's alleged error resulted in prejudice because the investigation of this physical evidence "may have shown that someone else killed" the victim. Mem. at 19. However, I find this allegation entirely too speculative to meet the prejudice standard set forth in <u>Hill</u>. Petitioner has not described any specific information or evidence revealed by such an investigation that would have persuaded Petitioner to reject the plea offer and insist on going to trial.

    19. Petitioner also contends that counsel erred when he failed to obtain Petitioner's medical records. Petitioner alleges that these records "would have revealed head injuries, black outs, and extreme substance abuse . . . . [that] would have presented a significant impediment to the State's ability to prove the elements required for a conviction for either first- or second-degree murder." Mem. at 18. However, the supporting cases cited by Petitioner address only specific intent crimes, such as aggravated battery and first-degree murder, whereas, here, Petitioner pled guilty to the general intent crime of second degree murder. See <u>State v. Herrera</u>, 2001-NMCA-073, ¶ 18, 33 P.3d 22, 28 (citing <u>State v. Campos</u>, 1996-NMSC-043, ¶ 32, 921 P.2d 1266)

7

(indicating that New Mexico recognizes second-degree murder as a general intent crime). Petitioner fails to specify how the information contained in his medical records could prevent the State from proving the elements of second-degree murder. More importantly, Petitioner fails to show how his decision to plead guilty resulted from his counsel's failure to obtain these records.

20. In light of the evidence against Petitioner and the information to be gained from the investigation suggested by Petitioner, I find that counsel's failure to investigate was not objectively unreasonable. The evidence shows that the State had a very strong case against Petitioner, based primarily on Mr. Carabajal's confession[2] and the testimony of several witnesses who saw Mr. Carabajal and the victim together. See Romero v. Tansy, 46 F.3d 1024, 1029 (10th Cir. 1995) (quoting Strickland, 466 U.S. at 690) (explaining that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

21. However, even assuming a deficiency in counsel's conduct, Petitioner's claim of ineffective assistance of counsel fails. Petitioner has not demonstrated that any additional investigation would have led counsel to change his recommendation as to Petitioner's plea. See Hill, 474 U.S. at 370 (explaining that "where the alleged error of counsel is a failure to investigate . . . the determination whether the error "prejudiced" the defendant . . . will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea"). Thus, Petitioner has not shown a reasonable probability that, but for his counsel's failure to investigate, he would have gone to trial instead of entering a plea of guilty.

---

[2] Defense counsel filed a motion to suppress Mr. Carabajal's statement, which was denied.

Accordingly, relief based on this ground should be denied.

*Failure to File Motion for Change of Venue*

22. Petitioner alleges that trial counsel acted unreasonably when he withdrew a motion for change of venue instead of arguing the motion before the court. Petitioner's counsel explained that he withdrew the motion when, after reviewing the results of a survey, he realized the data did not support an argument for a change of venue. See Aff. of Jeff Rein, Ex. 6 to Ex. H, attached to Answer. Counsel is not ineffective for failing to raise an issue that is determined to be lacking in merit. See United States v. Dixon, 1 F.3d 1080, 1083 n.5 (10th Cir. 1991), abrogated on other grounds by, Florida v. White, 526 U.S. 559 (1999). Moreover, counsel was prepared to renew the motion for change of venue in the event that the defense encountered problems seating a jury. See Aff. of Rein, Ex. 6 to Ex. H; Mem. at 21. Under these circumstances, I do not find that counsel's failure to file a motion for change of venue was objectively unreasonable.

23. Moreover, I find Petitioner's allegation of prejudice fails to meet the standard set forth under Hill. Petitioner contends that "[i]f the motion had been pursued . . . [and if it] ha[d] succeeded, . . . . the plea negotiations are likely to have proceeded very differently." Mem. at 22. Petitioner's allegation is highly speculative and falls short of demonstrating that but for counsel's failure to pursue the motion, he would have rejected the State's plea offer and insisted on proceeding to trial. Accordingly, relief based on this ground should be denied.

*Failure to File Motion to Withdraw Plea Agreement*

24. Petitioner alleges that "[t]en days after his sentence, Petitioner informed [counsel] that he wanted to withdraw his plea," but counsel failed to move for withdrawal of the plea. Pet. at 10, Claim Five. I note that the issue of whether counsel unreasonably failed to file a motion to

9

withdraw Petitioner's guilty plea does not necessarily affect the voluntariness of that plea. Neither does the fact that Petitioner is unhappy with the outcome of his plea negate its validity. See United States v. Lumpkins, 845 F.2d 1444, 1451 (7th Cir. 1988) (stating that the finality of guilty pleas cannot be sacrificed whenever a defendant comes to regret his plea after sentencing).

25. Petitioner's counsel stated in an affidavit that he and Mr. Carabajal "had several discussions about the plea in this case" and that plea negotiations "were initiated at Mr. Carabajal's request." Aff. of Jeff Rein, Ex. 6 to Ex. H, attached to Answer. Petitioner appeared before Judge Brown and entered a plea of guilty to the charges set forth in his plea agreement. See T.98-51, at 24.9-25.6.[3] Petitioner indicated that he was satisfied with the services of his attorney. See id. at 27.8. A defendant's statements on the record "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977) (quoted in Romero, 46 F.3d at 1033 (10th Cir. 1995)); United States v. Estrada, 849 F.2d 1304, 1306 (10th Cir. 1988); see also Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

26. Mr. Carabajal signed a written plea agreement indicating that he understood the charges against him and the consequences of pleading guilty. The terms of the Repeat Offender Plea and Disposition Agreement ("Plea Agreement"), signed by Mr. Carabajal on February 3,

---

[3] "T" (Tape) citations to the state record proper are to a Sony Model BM-88, with approximately 47 counters per tape side.

1998, provided that "any period of initial incarceration shall not exceed fifty (50) years." Plea Agreement, Ex. B, attached to Answer. Judge Brown found that Mr. Carabajal's counsel thoroughly discussed the plea and its consequences with Mr. Carabajal, and also noted that at the time Mr. Carabajal submitted his plea, the trial court "engaged . . . in considerable discussion of the plea and its consequences with Mr. Carabajal." Letter Decision of Judge Brown at 3, Ex. M, attached to Answer.

27. Judge Brown sentenced Mr. Carabajal to "a total of fifty-eight (58) years of incarceration," directing that "eight (8) years of the above sentence be suspended on the condition that [Mr. Carabajal] be placed on supervised probation for five (5) years upon his release." Judgement and Sentence, Ex. A, attached to Answer. Judge Brown also ordered that Mr. Carabajal "be placed on parole for two (2) years after release." Id. Thus, the sentence imposed by Judge Brown does not exceed an initial incarceration period of fifty years.

28. Petitioner appears to argue that his counsel should have known that he was incompetent to enter a plea. In his Petition, Mr. Carabajal states that he was "under the influence of psycotropic [sic] medication when he accepted the plea." Pet. at continuation of 7. Petitioner alleges that his counsel "was aware that Mr. Carabajal was taking anti-depressant medications while in custody . . . [and that] he was holding back sinequan pills . . . and was taking them all at once." Mem. at 23. Petitioner also alleges that he was taking three other medications at the Sandoval County detention center, and that his medications "knocked him out." Id.

29. Petitioner does not allege that he had taken improper or unusual amounts of medication at the time he agreed to the terms of his plea agreement. Indeed, Petitioner does not specifically allege that his ability to knowingly and voluntarily enter into a plea was impaired by

11

the effect of any medication. Similarly, while Petitioner alleges that counsel was aware of his medication history, he does not specifically allege that counsel had reason to know that the effects of any medication rendered Petitioner incompetent to enter a plea. Finally, Petitioner does not allege that had he not been under the influence of medication, he would have rejected the plea and insisted on going to trial.

30. Although Petitioner's counsel acknowledged that Mr. Carabajal had received "medications to help him detox from alcohol . . . . [and] a mild anti-depressant," he does not recall Mr. Carabajal saying that he was taking any psychotropic medication when asked about medication at the plea hearing. Aff. of Rein, Ex. 6 to Ex. H, attached to Answer. Nor does the evidence indicate that Petitioner was "knocked out" when he entered into his plea. During the plea hearing, the court inquired more than once whether Mr. Carabajal was free of alcohol, drugs and medication. See T.98-51, at 17.1, 20.7. Moreover, the court determined, based on its "observ[ation] [of] Mr. Carabajal during numerous court proceedings," that "[a]t no time . . . was Mr. Carabajal unaware of his surroundings; the seriousness of the proceedings; the complexity of the issues; [or] the severity of the charges." Letter Decision of Judge Brown, Ex. M, attached to Answer. This finding is not contrary to clearly established Federal law, nor is it based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1), (2). Petitioner fails to demonstrate that his counsel knew or should have known that his ability to knowingly and voluntarily agree to a plea was impaired. Petitioner also fails to demonstrate that he was prejudiced by the allegedly deficient conduct of counsel. Thus, relief based on this ground should be denied.

31. Petitioner also appears to argue that his counsel unreasonably failed to advise him

with respect to probation or parole. Although the Plea Agreement does not specifically provide for probation or parole, its terms do suggest the possibility. See Plea Agreement (providing that the State will commence Habitual Offender Proceedings "[i]n the event [that Carabajal] . . . violate[s] any of the conditions of any probation or parole to which he may be or become subject after entry of this Agreement"). Nothing in the Plea Agreement precludes the imposition of probation, parole or fees in addition to incarceration. Petitioner does not allege that counsel informed him that he would not be subject to probation or parole. In light of the evidence, I find that counsel's alleged failure to advise Petitioner regarding the possibility of parole or probation did not fall below an objective standard of reasonableness and did not affect the voluntariness of Petitioner's plea.

32. Finally, even if counsel's conduct was deficient as alleged, Petitioner's claim of ineffective assistance of counsel fails because his allegation of prejudice does not meet the standard set forth in Strickland and Hill. Petitioner states that the prejudice resulting from counsel's failure to adequately advise him and file a motion to withdraw his plea "is the difference between the sentence Mr. Carabajal is currently serving and the sentence he bargained for; [that is] eight years of incarceration, conditionally suspended." Mem. at 25. Petitioner fails to allege or show that, but for counsel's failure to advise him regarding the possibility of probation/parole and to file a motion to withdraw the plea agreement, he would have insisted on going to trial. Indeed, the evidence indicates that if defense counsel had filed a motion to withdraw Mr. Carabajal's plea, it would have been denied. See Letter Decision of Judge Brown, Ex. M, attached to Answer (finding "nothing in Mr. Carabajal's testimony that would have caused me then or even now with full knowledge of the all facts to allow withdrawal of the plea"). Petitioner

cannot now recant the voluntariness and intelligence of his plea because he has not shown that ineffective assistance of counsel played a part in his acceptance of the plea agreement. See Worthen v. Meachum, 842 F.2d 1179, 1184 (10th Cir. 1988) overruled on other grounds, Coleman v. Thompson, 501 U.S. 722 (1991). Accordingly, relief based on this claim should be denied.

*Failure to Insure Presence of Witnesses at Hearing on Motion to Reconsider the Sentence*

33. Petitioner alleges that no witnesses testified on his behalf at the hearing on the motion to reconsider his sentence, because his attorney unreasonably failed to notify the witnesses that the hearing time had changed. Mem. at 26. However, I need not decide whether the conduct of counsel was objectively unreasonable, because the prejudice alleged by Petitioner fails to meet the requirement for prejudice with respect to sentencing proceedings.

34. "[A] court may not set aside a conviction or a sentence solely because the outcome would have been different absent counsel's deficient performance." United States v. Kissick, 69 F.3d 1048, 1055 (10th Cir. 1995) (citing Lockhart v. Fretwell, 506 U.S. 364 (1993)). In the context of sentencing, a claim of ineffective assistance of counsel will fail where a petitioner cannot show that counsel's performance rendered the sentencing proceeding fundamentally unfair or unreliable, or resulted in a significantly greater sentence. See id.; United States v. Roman, (Table, text in Westlaw), 1998 WL 381066, *3 (10th Cir.(Colo.)); Allen v. United States, 175 F.3d 560, *562 (7th Cir. 1999) (explaining that "in terms of sentencing error, only a significant increase in the sentence, attributable to counsel's error, constitutes prejudice").

35. Here, Petitioner alleges that his attorney's failure prejudiced him "by undermining the

14

chances that Judge Brown would reconsider the sentence." Mem. at 27 (emphasis added). Petitioner provides nothing more than speculation with respect to the allegedly prejudicial effect of counsel's conduct. Petitioner does not provide a summary of the witnesses' expected testimony, much less demonstrate a reasonable probability that their testimony would persuade the court to modify Petitioner's sentence. Nor does Petitioner allege that the witnesses' testimony would result in a significantly lighter sentence than what the court imposed. Petitioner fails to show that counsel's allegedly deficient performance rendered the sentencing proceeding fundamentally unfair or unreliable, or resulted in a significantly greater sentence. Thus, relief based on this ground should be denied.

**Recommended Disposition**

I recommend that Petitioner's application for writ of habeas corpus be denied and that this cause be dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE